UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMOFI MASTER LDC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ASSOCIATED THIRD PARTY ADMINISTRATORS, et al.,<br><br>Defendants. | Case No. 16-cv-00855-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Docket No. 26 |

Plaintiffs CAMOFI Master LDC ("CAMOFI") and CAMHZN Master LDC ("CAMHZN") (collectively, "CAM") have filed suit against multiple defendants, including Associated Third Party Administrators ("ATPA") and Richard E. Stierwalt. ATPA has filed cross-claims against Mr. Stierwalt. Currently pending before the Court is Mr. Stierwalt's motion to compel arbitration. Mr. Stierwalt moves to compel arbitration of ATPA's cross-claims against him. He also moves to compel arbitration of two of the claims asserted against him by CAM. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** in part and **DENIES** in part the motion to compel. More specifically, ATPA's claims shall be arbitrated, but not CAM's.

## I. DISCUSSION

A.  ATPA's Cross-Claim

In its cross-claim, ATPA alleges that Mr. Stierwalt was formerly ATPA's CEO and director. *See* CC ¶ 3. According to ATPA, if CAM's

> allegations [against ATPA] are proven, those claims would in turn establish claims in favor of ATPA against Stierwalt personally, in both his capacity as an officer and a director of ATPA. If [CAM's] allegations are proven, they would establish that [Mr.] Stierwalt

> breached his duties to ATPA by engaging in self-dealing, ignoring conflicts of interest and colluding with other named Defendants as outlined in the Complaint.  [CAM's] allegations may also establish that [Mr.] Stierwalt exceeded his authority as an officer of ATPA during the relevant time period with regard to the negotiation and handling of the Notes and the transactions leading up to the execution of the Notes all of which caused and continues to cause substantial financial and reputational harm to ATPA.  For these reasons, if [CAM's] allegations are proven, [Mr.] Stierwalt must be held personally liable for any and all damages he caused to ATPA *vis a vis* any judgment awarded to [CAM] in this litigation.

CC ¶ 8.

In his motion, Mr. Stierwalt argues that the entirety of ATPA's cross-claim is subject to arbitration based on an employment agreement that he entered into with United Benefits and Pension Services, Inc. ("UBPS"), a company affiliated with ATPA.  *See* Stierwalt Decl., Ex. A (Emp. Agmt., Recital A) (reciting that ATPA is a wholly-owned subsidiary of UBPS).  That agreement specifically provided that Mr. Stierwalt would be an executive officer and director for not only UBPS but also ATPA.  A copy of the employment is attached to the Stierwalt declaration as Exhibit A.  The employment agreement reflects that UBPS "desires to retain [Mr. Stierwalt] as an executive officer and director of [UBPS] *and* its present or future Affiliates . . . , *including, without limitation, [ATPA]*, a California corporation and a wholly-owned subsidiary of [UBPS]."  Emp. Agmt., Recital A (emphasis added).  The agreement further provides that it shall be governed by New York law and that "*[a]ll disputes relating in any way to this Agreement* shall be resolved exclusively through arbitration conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association as then in effect."  Emp. Agmt. ¶ 9(F) (emphasis added).

According to Mr. Stierwalt, based on the above provisions in the employment agreement, a New York district court has already determined that any employment-related dispute between him and ATPA is subject to arbitration, and issue preclusion prevents this Court from reconsidering ATPA's argument to the contrary.  In response, ATPA concedes the New York court's ruling but asserts that no preclusion can apply at this juncture because it is currently appealing the district court's judgment to the Second Circuit (and part of that appeal concerns the issue of whether ATPA is bound by the arbitration provision).

2

Because this Court is presented with the question of what preclusive effect to give to a federal court judgment, federal common law applies. *See Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (stating that "[t]he preclusive effect of a federal-court judgment is determined by federal common law"); *cf. Migra v. Warren Cit Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (stating that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"). Under the federal common law, where a federal court judgment is based on diversity jurisdiction (as here), a court must look to the rules of preclusion of the state where the court that rendered the judgment sat. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-09 (2001) (stating that, where there is a federal judgment arising from diversity jurisdiction, "the federally prescribed rule of decision [is that] the [preclusion] law that would be applied by state courts in the State in which the federal diversity court sits" governs, except where "the state law is incompatible with federal interests"); *see also Taylor*, 553 U.S. at 891 n.4 (stating that, "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits" except where "the state law is incompatible with federal interests"); *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006) (holding that, under *Semtek*, the preclusive effect of a federal court's diversity judgment is controlled by the law of the state in which the federal court sat).

In the instant case, the federal court judgment was issued in New York. ATPA has cited authority indicating that, under New York state law, "res judicata applies where . . . there has been a final disposition the merits from which no appeal has been taken." *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 268 (2d Cir. 1997). But the issue before the Court is not res judicata but rather collateral estoppel (*i.e.*, whether ATPA is barred from re-arguing the *issue* as to whether, as a nonsignatory to the employment agreement, it can be bound by the arbitration agreement contained therein). "There is authority in New York that collateral estoppel may apply to a lower court decision pending appeal," although "there are many New York cases suggesting caution in applying preclusion in such situations." *Indus. Risk Insurers v. Port Auth.*, 493 F.3d 283, 288 n.3 (2d Cir. 2007); *see also Law Enforcement Officers Union v. State by Seide*, 647 N.Y.S.2d 916, 920

3

1  n.5 (1996) ("The doctrine of collateral estoppel or issue preclusion operates where there has been a
2  final judgment on the merits, and may be used as a basis for collateral estoppel even though an
3  appeal is pending. However, the doctrine is a flexible one and the court is not required to
4  automatically apply it even where formal prerequisites are met."). "[T]he majority view in New
5  York is that even the possibility of appeal from a final order does not alter the collateral estoppel
6  effect of that order under New York law." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower*
7  *Condo.*, No. 04-CV-7497 (KMK), 2007 U.S. Dist. LEXIS 13560, at *13 n.5 (S.D.N.Y. Feb. 27,
8  2007).

9  In light of the above authority, the Court finds that collateral estoppel is a bar to ATPA's
10 position that it cannot be compelled to arbitration because it was not a signatory to the
11 employment agreement. However, even if preclusion could not apply because of the pending
12 appeal, ATPA would fare no better. That is, the Court agrees with the merits of the New York
13 court's conclusion that ATPA is subject to arbitration, even though it is not a signatory to the
14 employment agreement.

15 In *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), the Supreme Court made clear
16 that "state contract law regarding the scope of agreements (including the question of who is bound
17 by them)" applies even in cases governed by the Federal Arbitration Act ("FAA"). *Id.* at 630.
18 Therefore, even if this case is governed by the FAA, the Court still looks to state law to see
19 whether ATPA, as a nonsignatory, can be compelled to arbitrate. As to which state law is
20 applicable, the employment agreement between Mr. Stierwalt and UTPA provides that New York
21 state law governs. *See* Emp. Agmt. ¶ 9(F) ("This Agreement shall be governed by and construed
22 in accordance with the laws of the State of New York applicable to agreements made and to be
23 performed in that state, without regard to any of its principles of conflicts of laws or other laws
24 that would result in the application of the laws of another jurisdiction.").

25 Under New York law, "[a]rbitration is a matter of contract grounded in agreement of the
26 parties," and so "nonsignatories are generally not subject to arbitration agreements." *Matter of*
27 *Belzberg v. Verus Invs. Holdings Inc.*, 21 N.Y.3d 626, 630 (2013) (internal quotation marks
28 omitted). However, "under limited circumstances nonsignatories may be compelled to arbitrate."

4

*Id.* For example, "[u]nder the direct benefits theory of estoppel, a nonsignatory may be compelled to arbitrate where the nonsignatory knowingly exploits the benefits of an agreement containing an arbitration clause, and receives benefits flowing directly from the agreement." *Id.* at 631 (internal quotation marks omitted). There is a distinction, however, between a direct benefit and an indirect one. "Where the benefits are merely indirect, a nonsignatory cannot be compelled to arbitrate a claim. A benefit is indirect where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself." *Id.* (internal quotation marks omitted). A benefit is direct where the benefit flows directly from the agreement. *See id.* Although

> it can be difficult to distinguish between direct and indirect benefits[,] [t]he guiding principle is whether the benefit gained by the nonsignatory is one that can be traced directly to the agreement containing the arbitration clause. The mere existence of an agreement with attendant circumstances that prove advantageous to the nonsignatory would not constitute the type of direct benefits justifying compelling arbitration by a nonparty to the underlying contract. Also, absent the nonsignatory's reliance on the agreement itself for the derived benefit, the theory would extend beyond those who gain something of value as a direct consequence of the agreement.

*Id.* at 633-34 (also stating that "a connection based on mere extended causality is beyond the intended scope of the direct benefits estoppel theory").

In its papers, ATPA argues that the direct benefits theory is not applicable in the instant case but its argument is not persuasive. ATPA argues that its "mere mention in the UBPS Employment Agreement" does not mean that it receives a direct benefit. ATPA Opp'n at 7. But ATPA is not simply mentioned in the employment agreement; the employment agreement specifies that UBPS "desires to retain [Mr. Stierwalt] as an executive officer and director of [UBPS] *and* its present or future Affiliates . . . , *including, without limitation, [ATPA]*, a California corporation and a wholly-owned subsidiary of [UBPS]." Emp. Agmt., Recital A (emphasis added). There is thus clearly a direct benefit to ATPA under the employment agreement: it obtained the services of Mr. Stierwalt as a CEO. ATPA implicitly admits this fact through its cross-claim where it alleges that Mr. Stierwalt was formerly its CEO and director. *See* CC ¶ 3 ("Upon information and belief, Defendant and Cross-Defendant Richard Stierwalt . . . was the

former chief executive officer and director of ATPA.").

The fact that ATPA's claims against Mr. Stierwalt are dependent on CAM's claims against Mr. Stierwalt – *e.g.*, "*if* [CAM] prevail[s] in [its] action against ATPA, [then] ATPA has a right to be indemnif[ied] from [Mr.] Stierwalt," ATPA Opp'n at 4 (emphasis in original); *see also* ATPA Opp'n at 4 (stating that ATPA seeks relief on *all* of its claims only if CAM's allegations are proven in the first place) – does not alter this analysis. Assuming (for the time being) that CAM's claims against Mr. Stierwalt cannot be compelled to arbitration, then those claims will be litigated; that does not mean, however, that ATPA's claims against Mr. Stierwalt should also be litigated. ATPA presented no any authority supporting this proposition.

Of course, to the extent ATPA proposes that its to-be-arbitrated claims should be stayed to await the outcome of CAM's claims against Mr. Stierwalt, that makes practical sense. *See* ATPA Opp'n at 2 (arguing that its claims should "trail the main case" brought by CAM against, *inter alia*, Mr. Stierwalt). Nonetheless, that decision should be made by the arbitrator, and not this Court. *See Capital Pizza Huts, Inc. v. Linkovich*, No. 6:15-cv-03443-MDH, 2015 U.S. Dist. LEXIS 156086, at *5 (W.D. Mo. Nov. 18, 2015) (noting that there are "serious questions" about a court's "authority to grant a stay in the pending arbitration proceedings, even if the Court were to consider such action prudent"); *Wells Enters. vv. Olympic Ice Cream*, 903 F. Supp. 2d 740, 751 (N.D. Iowa 2012) (concluding that "authority is far from clear" as to whether a "court has the power to stay or enjoin a pending arbitration proceeding"); *see also Ga. Cas. & Sur. C. v. Excalibur Reins. Corp.*, 4 F. Supp. 3d 1362, 1371-72 (N.D. Ga. 2014) (concluding that "this Court may [not] order the arbitrators not to stay the arbitration" because this "would entangle the Court" in issues "go[ing] to the merits of the [arbitrable] dispute between the parties"); *cf. CRT Capital Grp. v. SLS Cap., S.A.*, 63 F. Supp. 3d 367, 376 (S.D.N.Y. 2014) (stating that a court "may enjoin an arbitration proceeding . . . when the parties 'have not entered into a valid and binding arbitration agreement' or when the claims are 'not within the scope of an arbitration agreement'").

The Court therefore concludes that ATPA's cross-claims against Mr. Stierwalt should be arbitrated but declines to stay the arbitration, as that is a decision to be made by the arbitrator.

///

6

B.   CAM's Claims

In its complaint, CAM has asserted a variety of claims, both contract and tort based, against the various defendants. As to Mr. Stierwalt specifically, however, CAM has asserted only tort-based claims, including claims for fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, and fraudulent transfer. In his motion, Mr. Stierwalt argues that two of the causes of action against him – *i.e.*, the claims for breach of fiduciary duty and fraudulent transfer – should be arbitrated and that the remainder of the claims against him should be stayed until after the arbitration is decided.

Similar to above, Mr. Stierwalt's assertion of arbitrability is based upon his employment agreement with UBPS. CAM, however, is not a party to the employment agreement. Nonetheless, Mr. Stierwalt contends that "[a] party bringing a derivative claim on behalf of a corporation must arbitrate if the corporation through which the claim is brought has an arbitration agreement with the defendant." Mot. at 7. According to Mr. Stierwalt, CAM's claims of breach of fiduciary duty and fraudulent transfer are "derivative" claims because CAM's "standing to bring breach of fiduciary duty claims against [him] arises solely through ATPA's alleged insolvency, which allows [CAM] to stand in the place of ATPA to bring claims against [Mr. Stierwalt] that could otherwise be brought by only ATPA itself." Reply at 1; *see also Carramerica Realty Corp. v. NVIDIA Corp.*, No. C 05-00428 JW, 2006 U.S. Dist. LEXIS 75399, at *15-16 (N.D. Cal. Sept. 29, 2006) (stating that "[a] corporation's officers and directors owe no fiduciary duty to creditors under California law until the corporation becomes insolvent" and that, "[o]nce a corporation becomes insolvent, the scope of a director's or officer's fiduciary duty to creditors is to not 'divert, dissipate or unduly risk assets necessary to satisfy their claims'").

Mr. Stierwalt's position is without merit.

First, he fails to address how the fraudulent transfer claim can be characterized as a "derivative" claim, particularly as fraudulent transfer can exist even in the absence of any insolvency by the debtor. *See United States Fid. & Guar. Co. v. Scott Cos.*, No. C-03-5376 SBA (EMC), 2007 U.S. Dist. LEXIS 34847, at *20-21 (N.D. Cal. May 10, 2007) (discussing California's Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439 *et seq.*; noting that

"[s]ection 3439.04 of the Act sets up three independent types of fraudulent transfers – more specifically, three types which do not require proof the debtor's insolvency").

Second, Mr. Stierwalt's contention that the fiduciary duty claim is "derivative" is problematic. The case on which he relies, *Frederick v. First Union Securities, Inc.*, 100 Cal. App. 4th 694 (2002), simply made the point that a *shareholder derivative action* is a lawsuit being brought by an individual on behalf of the corporation – *i.e.*, the claim truly belongs to the corporation. Therefore, because the *corporation* had a contract with the defendant being sued, and that contract contained an arbitration provision, the defendant could compel the individual *suing on behalf of the corporation* to arbitration.[1] *See id.* at 697. CAM's claims here cannot fairly be compared to a shareholder derivative action – it is not bringing an action on behalf of ATPA, but rather bringing an action *on its own behalf*. That CAM cannot bring the fiduciary claim until ATPA is insolvent is simply (in effect) a condition precedent; that does not change the fact that the claim belongs to CAM and not to ATPA. *See Carramerica*, 2006 U.S. Dist. LEXIS 75399, at *15-16 (noting that "[a] corporation's officers and directors owe no fiduciary duty to creditors

---

[1] The specifics in *Frederick* are as follows. A shareholder of a company named En Pointe filed a shareholder derivative suit, alleging that certain directors and officers of company, in conjunction with others, "engaged in a classic pump and dump scheme to artificially inflate En Pointe's stock price to enable the insiders of En Pointe to pocket millions in unlawful insider trading proceeds." *Frederick*, 100 Cal. App. 4th at 696 (internal quotation marks omitted). One of the named defendants was a securities brokerage company, First Union, which "served as a market maker in En Pointe securities." *Id.* First Union and En Pointe had a client agreement that authorized First Union to buy and sell securities for En Pointe." *Id.* That agreement contained a broad arbitration clause. *See id.*

First Union moved to compel the shareholder derivative suit to arbitration. The plaintiff argued that he "should not be bound by an arbitration agreement entered into by . . . two persons [representing First Union and En Pointe], whom he alleges to be the principal participants in the market manipulation scheme." *Id.* at 697. The court disagreed, noting that

> [p]laintiff is not bringing this action on his own behalf, but derivatively on behalf of the corporation. *The causes of action do not belong to him, but to En Pointe.* . . . Because shareholder derivative actions are brought to enforce a *corporate* cause of action against officers, directors and third parties, the shareholder, standing in the shoes of the corporation have no rights greater than those of the corporation, nor can those they choose to sue be deprived of defenses they could assert against the corporation's claims.

*Id.* (internal quotation marks omitted; emphasis in original and added).

8

under California law until the corporation becomes insolvent").

Mr. Stierwalt has failed to find an applicable exception to the general rule that nonsignatories to a contract are not bound by an arbitration clause contained therein. *See Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) ("recogniz[ing] five theories for binding nonsignatories to arbitration agreements: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel").

Accordingly, the Court shall not compel CAM's fraudulent transfer and fiduciary duty claims against Mr. Stierwalt to arbitration.

## II.  CONCLUSION

For the foregoing reasons, the Court grants Mr. Stierwalt's motion to compel arbitration with respect to ATPA's cross-claim. However, the Court denies the motion with respect to CAM's complaint.

As to whether the Court should stay the ATPA/Stierwalt arbitration pending the outcome of this litigation, that makes practical sense but, as noted above, that is a decision for the arbitrator to make rather than this Court.

This order disposes of Docket No. 26.

**IT IS SO ORDERED**.

Dated: June 16, 2016

_____
EDWARD M. CHEN
United States District Judge

9