United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMOFI MASTER LDC, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>ASSOCIATED THIRD PARTY ADMINISTRATORS, et al.,<br><br>          Defendants. | Case No.  16-cv-00855-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM**<br><br>Docket No. 79 |

## I.  INTRODUCTION

Plaintiffs CAMOFI Master LDC ("CAMOFI") and CAMHZN Master LDC ("CAMHZN") initiated this lawsuit against multiple defendants, namely:

(1)   Associated Third Party Administrators ("ATPA");

(2)   United Benefits and Pension Services, Inc. ("UBPS");

(3)   Med-Tech Health Solutions, LLC ("Med-Tech")[1];

(4)   Richard E. Stierwalt (allegedly the former CEO of both ATPA and UBPS);

(5)   Diane Gist (allegedly the Senior VP of ATPA and Secretary of UBPS); and

(6)   Jesse M. Kessler (allegedly the owner of Med-Tech) (collectively, "Defendants").

Plaintiffs' allegations against Defendants are as follows: Plaintiffs issued two Secured Notes to ATPA and UBPS (collectively, the "Company"). In connection with the Secured Notes, CAM and the Company also entered into a Security Agreement; furthermore, Med-Tech and Mr.

---

[1] An arbitration decision adjudicating a dispute between Mr. Stierwalt and UBPS/ATPA stated that Med-Tech owns 96% of the stock of UBPS and ATPA. *See* Stierwalt Decl., Ex. D (Arb. Dec. at 2).

Kessler (collectively, the "Kessler Defendants") entered into agreements with Plaintiffs, guaranteeing that the Notes would be paid. After payments were not made on the Notes, CAM sued the Kessler Defendants and obtained a judgment against them in New York state court. Subsequently, Plaintiffs and the Kessler Defendants – as well as, *inter alia*, the Company itself – entered into a Settlement Agreement pursuant to which the Kessler Defendants and the Company confessed judgment. However, payments still were not made under the Secured Notes, the Security Agreement, and the Settlement Agreement. According to Plaintiffs, instead of paying what was owed, the Company made improper distributions to non-Company employees and otherwise improperly used corporate funds – all in violation of the Notes, the Security Agreement, and the Settlement Agreement. *See* Docket No. 16 ("FAC") ¶ 1. This left the Company without sufficient capital to pay its obligations. Furthermore, at the time of the improper payments and distributions, the Company was insolvent. *See* FAC ¶ 1. Plaintiffs bring both contract and tort claims against Defendants.

After Plaintiffs filed this action, the Kessler Defendants filed counterclaims against Plaintiffs and cross-claims against UBPS. Docket No. 72-1. ("Counterclaim"). The Kessler Defendants allege that their guarantee was made as part of an agreement whereby Med-Tech acquired an equity interest in UBPS, and that they were fraudulently induced to enter into this agreement by UBPS's concealment of certain liabilities. *Id.* ¶ 15. The Kessler Defendants assert claims for fraud and breach of warranty against UBPS, as well as two claims styled "Rescission" and "Stay of Proceedings" against UBPS and Plaintiffs.

Now pending before the Court is Plaintiffs' motion to dismiss the latter two claims as to Plaintiffs ("Motion"). Docket No. 79. The Court **GRANTS** in part and **DENIES** in part Plaintiffs' motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

A. CAM's Complaint

In its first amended complaint ("FAC"), Plaintiffs allege as follows. In November 2012, ATPA and UBPS (collectively, the "Company") issued to CAMOFI a Senior Secured Note worth more than $11.3 million. *See* FAC ¶ 15. The Company also issued a Senior Secured Note worth

approximately $1.2 million to CAMHZN.  *See* FAC ¶ 15.  Ms. Gist signed the Notes on behalf of ATPA, and Mr. Stierwalt signed on behalf of UBPS.  Mr. Stierwalt signed in his capacity as President and CEO of UBPS.  *See* FAC ¶ 16.  Under the Notes, Plaintiffs are secured on a first priority basis.  *See* FAC ¶ 37.  The Notes also put restrictions on the ability of the Company's subsidiaries to distribute their assets, including, *e.g.*, their ability to make payments to employees and affiliates.  *See, e.g.*, FAC ¶¶ 40-41.

In connection with the Notes, the Company also entered into a Security Agreement in favor of Plaintiffs.  *See* FAC ¶ 17.  Furthermore, in connection with the Notes, Med-Tech and Mr. Kessler provided unconditional and irrevocable Guarantees of the Notes.  *See* FAC ¶ 28.

The Company failed to make the required payments under the Notes.  *See* FAC ¶ 25.  This led Plaintiffs to file a lawsuit, in a New York state court, against the Kessler Defendants.  Plaintiffs successfully obtained a judgment against the Kessler Defendants.  In connection with the judgment, Plaintiffs entered into a Settlement Agreement with not only the Kessler Defendants but also, *inter alia,* ATPA and UBPS (collectively, the "Company").  *See* FAC ¶ 33.  As part of the Settlement Agreement, the Kessler Defendants, the Company, and others confessed judgment to the amounts due and owing under the New York state court judgment.  *See* FAC ¶ 34.  No payments have been made in satisfaction of the judgment or the Settlement Agreement.  *See, e.g.*, FAC ¶¶ 32, 34-35.

According to Plaintiffs, instead of paying the money owed, as required by, the Secured Notes and the Settlement Agreement, Defendants made improper distributions and expenditures with respect to Company funds (*e.g.*, to Med-Tech, Mr. Kessler, and Mr. Stierwalt).  *See, e.g.*, FAC ¶¶ 1, 47-48.  "These improper distributions and expenditures left the Company with insufficient capital to pay its obligations when they became due, resulting in millions of dollars of penalties and interest being incurred thereon."  FAC ¶ 1.  "Furthermore, at the time of such improper payments and distributions, the Company was insolvent [in the millions]."   FAC ¶ 1.

B.    The Kessler Defendants' Counterclaim

The Kessler Defendants allege additional facts regarding the background of the disputed transactions: In 2007, Richard Smithline acquired a "significant equity interest in UBPS"

3

following a stock transaction. Counterclaim ¶ 8. In the course of conducting due diligence for this transaction, Smithline learned that ATPA, which is a wholly-owned subsidiary of UBPS, was a participant in a multi-employer benefit plan ("the Plan"). *Id.* ¶ 10. Plaintiffs are each investment funds controlled by Smithline; following his acquisition of an interest in UBPS, Smithline caused Plaintiffs to make loans evidenced by promissory notes totaling $17,246,635 to ATPA and UBPS. *Id.* ¶ 11. At some point prior to August 17, 2012, ATPA and UBPS were in default on these loans. *Id.* ¶ 13. On August 17, 2012, Med Tech entered into an agreement with ATPA and UBPS to purchase stock in UBPS (the "Stock Purchase Agreement"). *Id.* ¶ 1. The Stock Purchase Agreement provided for the Kessler Defendants to make a payment of $2,000,000 on the original notes to Plaintiffs, and "the Notes were amended and restated to provide for an accelerated payment schedule (the 'Amended Notes') as well as being guaranteed by" the Kessler Defendants. *Id.* ¶ 14.

The Kessler Defendants further allege that, in the Stock Purchase Agreement, UBPS made representations and warranties that "there were no contingent obligations owed by ATPA in excess of $25,000; ATPA had no 'known or unknown' liabilities not reflected in its financial statements; and, with exceptions not relevant here, ATPA was not a member of a multi-employer ERISA plan." *Id.* ¶ 16. In fact, as noted above, ATPA was a member of such a plan, and was, moreover, subject to "substantial withdrawal liability under the Plan." *Id.* ¶ 15. Plaintiffs and UBPS were each aware of this liability, and UBPS concealed the liability in order to induce the Kessler Defendants to enter the Stock Purchase Agreement. *Id.* ¶ 15. The Kessler Defendants allege that Plaintiffs knew of these misrepresentations, and that had the Kessler Defendants been aware of the withdrawal liability, they would not have entered into the Stock Purchase Agreement or guaranteed the Amended Notes. *Id.* ¶ 20. The Kessler Defendants learned of the withdrawal liability shortly before judgment was entered in the New York case against them, "but not in time to present a challenge to such judgment before entry." *Id.* ¶ 27.

The Kessler Defendants initially alleged claims for Fraud, Breach of Warranty, and "Stay of Proceedings" against both Plaintiffs and UBPS. Docket No. 43. Plaintiffs moved to dismiss, arguing that the Kessler Defendants had failed to state a claim for fraud against Plaintiffs under the

4

1  heightened pleading standard of FRCP 9(b) for such claims; that the Kessler Defendants had failed
2  to State a claim for Breach of Warranty against Plaintiffs because they did not allege the existence
3  of a contract or warranty between themselves and Plaintiffs; and that the Kessler Defendants had
4  failed to state a claim for Stay of Proceedings because a stay is a remedy, not a claim for relief,
5  and because no facts warranting a stay were alleged. Docket No. 69. In response, the Kessler
6  Defendants filed the operative amended Counterclaim, dropping Plaintiffs from the Fraud and
7  Breach of Warranty claims and adding the claim for Rescission. Docket No. 72-1. Plaintiffs then
8  filed the present motion.

### III. DISCUSSION

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990)).

As noted, Plaintiffs move to dismiss the Kessler Defendants second and fourth claims, for "Rescission" and "Stay of Proceedings," respectively. The Court addresses each claim in turn.

A.  Rescission

In their claim for Rescission, the Kessler Defendants assert that UBPS's fraudulent representations entitle them to rescind the Stock Purchase Agreement. Counterclaim ¶¶ 33-34. Moreover, because the guarantees of the Amended Notes were made as part of that Agreement, they argue that "[s]uch rescission will extinguish any liability of the Kessler Defendants on the Amended Notes and render the New York Judgment, which is premised upon such liability, void."

5

*Id.* ¶ 35.

Plaintiffs' principal ground for dismissal of this claim is that it is not, in fact, a claim at all, but rather merely a remedy. Motion at 5. Plaintiffs are correct as a matter of California law, as this court has explicitly held. *See Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *17 (N.D. Cal. Jan. 3, 2011) (agreeing that in California "there is no standalone claim for . . . rescission"); *see also Nakash v. Superior Court,* 196 Cal.App.3d 59, 70 (1987) ("Rescission is not a cause of action; it is a remedy."). The Kessler Defendants cite a single case from 1930 which they claim holds that rescission is a "complete cause of action," but they misread the case. *See* Docket No. 81 ("Opposition") at 4 n.1. In fact, the cited case, *Denovan v. Golden State Woolen Mills*, 104 Cal. App. 504 (1930), makes clear that the plaintiffs' cause of action was premised on the defendants' fraud, and that Plaintiffs sought rescission as a remedy.

The Kessler Defendants nonetheless also argue that, as third-party beneficiaries to the Stock Purchase Agreement, Plaintiffs have a "substantial interest" in the contract and are therefore necessary parties under Federal Rule of Civil Procedure 19(a). That rule provides that

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or
>
> **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> **(i)** as a practical matter impair or impede the person's ability to protect the interest; or **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a).

The Kessler Defendants point to case law holding that "[a]ll parties to a contract and 'others having a substantial interest in it' should be joined in an action to rescind or set aside the contract." *Jordan v. Paul Fin., LLC*, 644 F. Supp. 2d 1156, 1172 (N.D. Cal. 2009). Indeed, the Ninth Circuit has explained that "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be

1  affected by the determination of the action are indispensable." *Lomayaktewa v. Hathaway*, 520
2  F.2d 1324, 1325 (9th Cir. 1975).
3        The Plaintiffs, however, dispute that they would be affected by the rescission of the Stock
4  Purchase Agreement alone.  They contend that all of the events respecting them provided for in
5  the Agreement – namely, that "the Kessler Defendants would make a $2,000,000 payment on the
6  Original Notes to Plaintiffs, the Notes would be amended and restated to provide for an
7  accelerated payment schedule, and the Amended Notes would be guaranteed by the Kessler
8  Defendants" – have already taken place.  Docket No. 83 ("Reply") at 5.  To the extent they are
9  third-party beneficiaries, they claim, they have already received all of the benefits of the
10 agreement, and no longer have any interest.
11       The Court disagrees.  The Plaintiffs cannot be said to have received all of the benefits of
12 the agreement when they have not been paid the amount owed under the notes.  The Kessler
13 Defendants' guarantee is only valuable in reference to the underlying amount that the Kessler
14 Defendants promise to pay.  In this sense, the fact that the guarantee has already been signed does
15 not mean that Plaintiffs would be insulated from any consequences flowing from the rescission of
16 the agreement.  The Kessler Defendants' obligation to pay the amount remaining on the notes may
17 well depend on the validity of the original agreement.  Under California Law, rescission of a
18 contract terminates the rights of any third party beneficiaries to that contract.[2]  *See Principal Mut.*
19 *Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1486 (1998); *see also*
20 Restatement (Second) of Contracts § 309 (1981) ("A promise creates no duty to a beneficiary
21 unless a contract is formed between the promisor and the promisee; and if a contract is voidable or
22 unenforceable at the time of its formation the right of any beneficiary is subject to the infirmity.").
23 Thus, if the Stock Purchase Agreement is rescinded, Plaintiffs' rights under the Kessler
24 Defendants' guarantee may be void.  Indeed, Plaintiffs concede that "*if* the Stock Purchase

---

[2] Plaintiffs also argue that rescission is not available where, as here, a third party beneficiary as already accepted the benefits of the agreement.  But the case Plaintiffs rely refers to the *voluntary* rescission of an agreement by both parties, not a unilateral rescission on the basis of fraud.  *See Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1025 (2009) (explaining that "contracting parties may not rescind or revoke the contract where the 'beneficiary has accepted the benefit or has detrimentally acted in reliance thereon'").

United States District Court
For the Northern District of California

1 Transaction is rescinded, [the Kessler Defendants] may have the ability to pursue an action to set
2 aside the New York Judgment," and thus terminate their continued liability to Plaintiffs. Reply at
3 5. The fact that an intervening action to set aside the New York Judgment might be necessary is
4 of no moment; the fact of rescission puts Plaintiffs' rights in jeopardy.

5 Plaintiffs thus plainly do have a "substantial interest" in the validity of the Agreement,
6 insofar as it wholly determines their ability to pursue the Kessler Defendants for the remaining
7 amount owing on the Notes. *Jordan*, 644 F. Supp. at 1172. The Court therefore concludes that
8 under *Lomayaktewa*, Plaintiffs are indispensable parties as defined in Rule 19. The Court
9 accordingly denies Plaintiffs' motion to dismiss the claim for rescission; while Plaintiffs are
10 correct that this is properly considered a remedy rather than a separate cause of action, they are
11 nonetheless necessary parties to the Kessler Defendants' cross-claims, and thus must remain in the
12 action as nominal defendants.

13 B. Stay of Proceedings

14 The Kessler Defendants fourth claim is a request of "Stay of Proceedings." In that claim,
15 they state again that UBPS's alleged fraud "warrants voiding the New York Judgment" under New
16 York's Civil Practice Law and Rules, and they ask that, "[s]hould this Court determine for any
17 reasons that it should not declare the New York Judgment void," the Court stay the present
18 proceedings "while they pursue an action to void the New York Judgment." Counterclaim ¶¶ 43-
19 44.

20 Plaintiffs again argue that, as with "rescission," a stay is a remedy, not a cause of action.
21 The Kessler Defendants do not dispute this; they merely state that a stay might ultimately be
22 necessary if they were to prevail on their claims and this Court determined that it could not void
23 the New York Judgment. Opposition at 8-9. In that event, the Kessler Defendants would have to
24 pursue a separate action in New York courts to void the judgment, and a stay in this action could
25 be warranted. As Defendants' filing makes clear, however, there is no reason for the Court to
26 consider this "claim" at this time. Indeed, Defendants explicitly concede that this "is a matter that
27 need not be decided here." *Id.* at 8. On Defendants' own account, the question of a possible stay
28 will arise only *if* Defendants are successful in seeking rescission of the Stock Purchase Agreement,

8

and even then after a further determination that New York is the proper venue for an action seeking to void the New York Judgment. In short, even leaving aside the fact that the Kessler Defendants do not appear to raise a separate cause of action here, consideration of this point is entirely premature. If and when Defendants secure rescission of the Agreement, then they can file a separate motion seeking a stay. The Court therefore grants Plaintiffs' motion as to this claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion to Dismiss the rescission claim, but **GRANTS** Plaintiffs' Motion to Dismiss as to the request for a stay.

This order disposes of Docket No. 79.

**IT IS SO ORDERED**.

Dated: November 21, 2016

_____
EDWARD M. CHEN
United States District Judge