UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMOFI MASTER LDC, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ASSOCIATED THIRD PARTY ADMINISTRATORS, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-00855-EMC<br><br>**ORDER GRANTING TRUSTEE'S MOTION FOR THE DETERMINATION OF OWNERSHIP OF CLAIMS**<br><br>Docket No. 150 |

Plaintiffs CAMOFI Master LDC ("CAMOFI") and CAMHZN Master LDC ("CAMHZN") have sued Defendants Associated Third Party Administrators ("ATPA") and associated individuals and entities for their alleged failure to meet ATPA's obligations on notes owed to Plaintiffs. ATPA is in bankruptcy proceedings in the Central District of California, and the bankruptcy trustee has appeared in this action and filed the instant motion asserting that the ATPA estate owns certain of Plaintiffs' claims.

### I.　**FACTUAL AND PROCEDURAL HISTORY**

The relevant alleged facts are these:

In 2012, California corporation Associated Third Party Administrators together with Delaware corporation United Benefits and Pension Services, Inc. ("UBPS") issued secured notes to CAMOFI and CAMHZN in the amount of $12.5 million. *See* Docket No. 16 ("FAC") ¶ 15. Delaware corporation Med-Tech and ATPA director Jesse Kessler agreed to guarantee the payment of these notes. *See id.* ¶ 28. ATPA and UBPS defaulted on the notes, whereupon CAMOFI and CAMHZN sued Med-Tech and Kessler and obtained a judgment against them in the amount of $14,617,888.88. *See id.* ¶¶ 25, 31.

In connection with the judgment, CAMOFI and CAMHZN entered into a settlement

1 agreement with ATPA, UBPS, Med-Tech, Kessler, Accelera Health LLC ("Accelera"), and Trust Benefits Online LLC ("Trust Benefits"). The settlement agreement provided that these entities and persons were jointly and severally liable to CAMOFI and CAMHZN for the judgment amount. It also created a number of protections for CAMOFI and CAMHZN, including granting a first lien on Med-Tech's assets; securing the debt with the assets of ATPA, UBPS, Med-Tech, Accelera, and Trust Benefits on a first-priority basis; and banning ATPA and UBPS from transacting in significant sums with their directors, officers, employees, or affiliates without the approval of CAMOFI and CAMHZN. *See id.* ¶¶ 36, 37, 41.

In violation of the settlement agreement, ATPA and UBPS made significant payments to Kessler, ATPA director Richard Stierwalt, and others without the approval of CAMOFI and CAMHZN. *See id.* ¶ 47. ATPA and UBPS also violated the settlement agreement by raising salaries, executing employment agreements, and selling a significant portion of its assets. *See id.* ¶¶ 56, 57. Most relevantly for this motion, ATPA and UBPS improperly paid for various expenses, such as Med-Tech and Kessler's legal expenses, Med-Tech's real estate expenses, and personal bills. *See id.* ¶¶ 59-64. These actions caused ATPA and UBPS to be unable to meet their tax, pension, and benefits liabilities and to become insolvent. *See id.* ¶¶ 65-70. To redress these improper payments, CAMOFI and CAMHZN brought this action against Kessler, Stierwalt, and former ATPA officer Diane Gist (collectively "Insiders"), as well as against ATPA, UBPS, and Med-Tech. *See* Docket No. 1.

In the Central District of California, ATPA has filed for Chapter 11 bankruptcy. *See In re: Associated Third Party Administrators*, No. 2:16-bk-23679-SK (C.D. Cal.). The Bankruptcy Court appointed Richard K. Diamond as trustee for ATPA's estate ("Trustee"). The bankruptcy petition triggered an automatic stay on litigation against ATPA under 11 U.S.C. § 362. CAMOFI and CAMHZN requested and the Bankruptcy Court granted relief from that stay, permitting CAMOFI and CAMHZN to proceed with this suit. Docket No. 151 ("T's RJN"), Ex. 3 (Relief from Stay Order). Trustee moved for clarification that the Relief from Stay Order did not permit CAMOFI and CAMHZN to prosecute claims belonging to the bankruptcy estate, including Claims 4 and 5 of the FAC in this case. Docket No. 150 ("Mot.") at 2. The Bankruptcy Court indicated

in response that the issue of CAMOFI's and CAMHZN's standing to pursue Claims 4 and 5 was to be decided by this Court. T's RJN, Ex. 3, at 48, 50 ("I want to make sure everybody's 100 percent clear, any allegation in terms of standing or lack thereof of the CAM Lenders [here, Plaintiffs] to pursue the action in [the] Northern District needs to be adjudicated and resolved in the Northern District.").

Trustee therefore appeared in this action and filed the instant motion requesting a determination that Claims 4 and 5 are property of ATPA's estate and thus CAMOFI and CAMHZN cannot prosecute these claims in the instant case before this Court. Trustee seeks to stay CAMOFI's and CAMHZN's prosecution of those claims in this Court.

In Claim 4, CAMOFI and CAMHZN allege Kessler, Stierwalt, and Gist (collectively "Insiders") breached their fiduciary duty to preserve the corporation's assets for the benefit of creditors, FAC ¶ 96, but that they instead "wrongfully dissipat[ed]" the assets by "funneling assets to themselves" and "engaging in other forms of self-dealing." *Id.* ¶ 97. Claim 5, also a claim against Insiders, alleges fraudulent conveyance. Specifically, Claim 5 alleges that Insiders caused the complained-of conveyances to "hinder, delay, or defraud present or future creditors, including Plaintiffs." *Id.* ¶ 103.

Trustee has brought an adversary proceeding in the Bankruptcy Court against CAMOFI and CAMHZN, as well as against Med-Tech, Insiders, and other individuals. The adversary-proceeding complaint makes claims against Insiders for, *inter alia*, breaches of fiduciary duty and transfers of ATPA property, similar to Claims 4 and 5. *See* T's RJN, Ex. 1. It also makes claims for breach of fiduciary duty against CAMOFI and CAMHZN for installing new directors to ATPA's board in 2015 and using these directors to control ATPA to CAMOFI's and CAMHZN's benefit and to the detriment of ATPA and other creditors. *See id.* Plaintiffs have moved the Bankruptcy Court to transfer the adversary proceeding to this Court. *See* Docket No. 153 ("Opp."), at 2.

## II. <u>DISCUSSION</u>

A. <u>Procedural Propriety of the Motion</u>

Plaintiffs first argue that the instant motion is the wrong procedural vehicle and is

3

premature. They argue that the ownership of Claims 4 and 5 should be resolved on the facts by the Bankruptcy Court's adjudication of the declaratory-relief claim in the adversary proceeding. *See* Opp. at 2, 4-5. However, Plaintiffs cite no law that supports their argument. They cite only *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), for the proposition that "genuine factual issues should be resolved by trier of fact." Opp. at 5. *Anderson* addressed the standard for summary judgment; it did not address whether district courts may determine whether plaintiffs own certain claims and thus prosecute them.

Indeed, courts have routinely addressed whether creditors or trustees own certain claims and thus their standing to pursue those claims. *See, e.g.*, *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972) (holding that a trustee did not have standing to prosecute certain claims as a matter of law); *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988) (same); *Kayne v. Ho*, No. LA CV09-06816 JAK (CWx), 2013 WL 12120144 (C.D. Cal. May, 9, 2013) (holding that creditors did not have standing to prosecute certain claims as a matter of law). This is a proper matter for the Court.

Plaintiffs argue in the alternative that this Court should delay resolution of the issue until the Bankruptcy Court transfers the adversary proceeding here, so that this Court can decide the issue in the context of the declaratory-relief claim. However, it is not clear whether the Bankruptcy Court will transfer the adversary proceeding. In fact, the Bankruptcy Court stated that after this Court rules on the ownership of Claims 4 and 5, "[w]e can then come back . . . and figure out what's going to happen in the adversary proceeding." T's RJN, Ex. 1, at 50-51. There is no need to await transfer of the adversary proceeding to determine whether Plaintiffs have standing to pursue claims currently before this Court, particularly when such transfer might not occur.

Additionally, the Bankruptcy Court has specifically declined to decide the ownership of Claims 4 and 5 and indicated that the issue of ownership is to be decided by this Court. The Bankruptcy Court's multiple admonitions to that effect span many pages of the transcript for the hearing on Trustee's motion to clarify. *See* T's RJN, Ex. 1. The Court sees no reason not to decide Plaintiffs' standing to pursue those claims.

4

B.  Claim 4

The primary dispute is whether Plaintiffs have standing to prosecute Claim 4, or whether standing instead lies with Trustee.

1.  Analysis

The bankruptcy trustee has exclusive standing to pursue certain claims. Bankruptcy trustees are obligated to "collect and reduce to money the property of the estate," including the debtor's causes of action. *Smith v. Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (quoting 11 U.S.C. § 704(1)). Accordingly, a bankruptcy trustee has standing to prosecute the debtor's causes of action on behalf of the estate. *See id.* A debtor's causes of action include all claims "seeking to redress injuries to the debtor itself." *Id.* The trustee's standing to prosecute such claims is exclusive. *See Estate of Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate."); *id.* at 1175 (quoting with approval *Husvar v. Rapoport*, 430 F.3d 777, 780 (6th Cir. 2005), which held that plaintiffs in that case "lacked standing to prosecute the derivative action . . . because, in the absence of abandonment, only the debtor-in-possession of the bankruptcy estate (the bankruptcy trustee) can prosecute such a claim"); *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010) ("When the trustee does have standing to assert a debtor's claim, that standing is exclusive and divests all creditors of the power to bring the claim.").

Derivative actions, where a third party sues on behalf of a corporation, "belong[] to the corporation, not to the plaintiff asserting the claim." *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1118 (2008). Since the bankruptcy trustee has exclusive standing to bring claims belonging to the corporation, third parties may not bring derivative actions in bankruptcy. Instead, third parties may only bring direct claims. Direct and derivative claims "are mutually exclusive: i.e., the right of action and recovery belong[] either to the shareholders (direct action) or to the corporation (derivative action)." *Schuster v. Gardner*, 127 Cal. App. 4th 305, 312 (2005) (emphasis omitted) (quoting C. Hugh Friedman, *The Rutter Group California Practice Guide—Corporations* ¶ 6:598 (2004)).

Thus, Plaintiffs have standing to bring Claim 4 if it is a direct claim, but not if it is a derivative claim. Plaintiffs bring Claim 4 under the trust-fund doctrine. *See* FAC at 14. Under the trust-fund doctrine, when a corporation becomes insolvent, its assets "become a trust fund for the benefit of all creditors." *Berg & Berg Enters, LLC v. Boyle*, 178 Cal. App. 4th 1020, 1040 (2009) (quoting *CarrAmerica Realty Corp. v. NVIDIA Corp.*, No. C 05-00428 JW, 2006 WL 2868979, at *5 (N.D. Cal. Sept. 29, 2006)). As long as the corporation was solvent (*i.e.*, the corporation was able to fulfill its financial obligations), creditors' interest were protected by contract and unaffected by management decisions, which only affected shareholders as the corporation's residual risk holders. *See id.* at 1039. However, once insolvency arises, "the value of creditors' contract claims may be affected by management's business decisions," while "shareholder value is essentially worthless." *Id.* Thus, "insolvency shifts the residual risk of management decisions from shareholders to creditors." *Id.* As a result, "some of the duties formerly owed by directors only to shareholders are owed also to creditors." *Id.* These duties include and are limited to "the avoidance of actions that divert, dissipate, or unduly risk corporate assets that might otherwise be used to pay creditors claims." *Id.* at 1041 (emphasis omitted); *see* FAC ¶¶ 96-97 (Claim 4 alleging that Insiders wrongfully dissipated corporate assets through self-dealing). The key question is whether an action under the trust-fund doctrine is derivative or direct.

An action "is derivative, [i].e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property with any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *Jones v. H. F. Ahmanson & Co.*, 1 Cal. 3d 93, 106-07 (1969) (quoting *Gagnon Co., Inc. v. Nevada Desert Inn*, 45 Cal. 2d 448, 453 (1955)). A direct action lies only where the plaintiff's injuries "were not incidental to damages to the corporation." *Schuster*, 127 Cal. App. 4th at 313; *see also Berg*, 178 Cal. App. 4th at 1027 n.6 ("[T]he direct claim is simply one that reflects an injury that is not incidental to an injury to the corporation as a whole.").

Dissipation of corporate assets is an injury to the corporation, and any accompanying injury to creditors is incidental to the corporation's injury. In *Avikian v. WTC Fin. Corp.*, 98 Cal.

6

App. 4th 1108, 1115 (2002), the shareholder-plaintiffs' "core claim" was that the defendants had "mismanaged World [the corporation], and entered into self-serving deals," dissipating World's corporate assets. "Those assertions . . . amount to a claim of injury to World itself. . . . Appellants' own damages, the loss in value of their investments in World, were merely incidental to the alleged harm inflicted upon World and all its shareholders." *Id.* at 1116 (emphasis omitted); *see also Schuster*, 127 Cal. App. 4th at 312 ("Under California law, 'a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth). The corporation itself must bring such an action, or a derivative suit may be brought on the corporation's behalf.'" (quoting *The Rutter Group California Practice Guide—Corporations* ¶ 6:601.1)). In other words, "the gravamen of the complaint is injury to the corporation." *Jones*, 1 Cal. 3d at 106-07; *cf. Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 793 (Del. Ch. 2004) ("Whether a firm is solvent or insolvent, it—and not a constituency such as its stockholders or its creditors—owns a claim that a director has, by failing to exercise sufficient care, mismanaged the firm and caused a diminution to its economic value."). Thus, even when the fiduciary duty of corporate officers is owed to shareholders prior to insolvency, even though shareholders are affected, shareholders cannot sue the breaching parties directly; instead they must bring a derivative action. *See Jones*, 1 Cal. 3d at 106.

Under the trust fund doctrine, upon insolvency, the fiduciary duty is owed to the corporate creditors. As the Ninth Circuit has recognized, while "[i]t is, of course, true that the dissipation of assets limit[s] [a] firm's ability to repay its debts in liquidation," harming creditors, that is only "a recognition of the economic reality that any injury to an insolvent firm is necessarily felt by its creditors." *Smith*, 421 F.3d at 1004. "Thus, . . . if corporate directors mismanage an insolvent firm and cause it injury, the creditors will feel that injury *indirectly*." *Id.* (emphasis added). Like shareholder actions prior to insolvency, creditor actions under the trust-fund doctrine for the dissipation of corporate assets are derivative. It is still based on harm to the corporation which incidentally harms creditors. Furthermore, filing bankruptcy formally places the trustee in the exclusive position to vindicate harms to the corporation. The bankruptcy trustee controls such

7

derivative claims. *See Estate of Spirtos*, 443 F.3d at 1176.

Plaintiffs argue that they suffered particularized harm supporting a direct claim. For support, they point to ¶¶ 46-58 and 94-100 of the FAC. *See* Opp. at 2-3, 5. Paragraphs 46-58 of the FAC allege that Insiders caused ATPA to transfer funds out of the corporation in violation of ATPA's agreement with Plaintiffs. This, Plaintiffs offer, constitute "direct contravention of contract . . . and also breach of fiduciary duty." *Id.* at 3. However, transfers of funds out of the corporation harms ATPA in the first instance, and Plaintiffs were only indirectly harmed as a result of this harm to ATPA. Such harm is "incidental to an injury to the corporation as a whole" and is derivative. *Berg*, 178 Cal. App. 4th at 1027 n.6.

Paragraphs 94-100 of the FAC, which constitute Claim 4, allege wrongful dissipation of ATPA's assets in breach of Insiders' "duty to Plaintiffs to preserve the assets of the corporation for the benefit of the creditors, including Plaintiffs." FAC ¶ 96. This allegation, which references harm to all creditors "including Plaintiffs," is clearly not an allegation of direct, particularized harm. *See Berg*, 178 Cal. App. 4th at 1027 n.6. Instead, such harm is to "the whole body of [a corporation's] stock or property with any severance or distribution among individual holders," the hallmark of a derivative claim. *Jones*, 1 Cal. 3d at 106-07.[1]

Second, Plaintiffs asserted at the motions hearing that secured creditors such as themselves, *see* FAC ¶ 37, by virtue of their security interest, enjoy a fiduciary duty that would support a direct claim for breach of that duty. None of the three cases cited by Plaintiffs supports their proposition. *See* Docket No. 165.

Plaintiffs primarily rely on *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138 (C.D. Cal. 2016). That case does not distinguish between secured and unsecured creditors. Instead, *Tatung* held that "Plaintiff, as the creditor of an insolvent corporation, . . . is not precluded from bringing a direct suit. Plaintiff seeks to recover for 'diversion of millions in funds and other assets which . . . remov[ed] WDE assets against which Tatung could have enforced the debt owed by WDE.' Plaintiff's claims are unique and individual to itself, despite the fact that other creditors

---

[1] It may be that Plaintiffs' breach of contract claims constitute direct claims. But Claim 4 is not such a claim.

8

1 may have also been damaged in a similar way. Accordingly, the Court will not grant summary
2 judgment on Plaintiff's breach of fiduciary duty claim on these grounds." *Id.* at 1197 (citation,
3 footnote, and emphasis omitted) (alteration in original). This short holding does not distinguish
4 between secured and unsecured creditors, much less find a fiduciary duty owed especially to
5 secured creditors. Moreover, it appears to contradict *Berg*, *Jones*, and the other cases in the above
6 analysis. This Court declines to follow *Tatung*.

The other two cases, *Koninklijke Philips Electronics N V v. National Film Laboratories Inc.*, Case No. CV 12-4576 GAF (FFMx), 2014 WL 12581759 (C.D. Cal. May 15, 2014), and *Dollar Tree Stores Inc. v. Toyama Partners LLC*, Nos. C 10-0325 SI, C 11-2696 SI, 2011 WL 3295420 (N.D. Cal. Aug. 1, 2011), similarly do not indicate that secured creditors are owed a fiduciary duty by virtue of their security interest. *Dollar Tree* held that an unsecured creditor was permitted to bring a direct claim that alleged self-dealing and preferential treatment of creditors to the disadvantage of the plaintiff-creditor. *See id.* at *9. This preferential treatment of other creditors constituted a direct and particularized injury supporting a direct claim. *See id.*; *see also Avikian*, 98 Cal. App. 4th at 1115 (explaining that minority shareholder's direct action in another case was appropriate because the majority shareholder manipulated a transaction so that the minority shareholder would not share in the proceeds, injuring only that shareholder and "not affect[ing] the value of the corporation generally"). Arguably, the harm to plaintiffs was not simply incidental to harm to the corporation.

*Koninklijke* held that "California caselaw expressly permits non-derivative actions by creditors under the trust fund doctrine." 2014 WL 12581759, at * 4. This holding does not distinguish secured creditors from unsecured creditors. Furthermore, though *Koninklijke* contradicts this Court's conclusion that creditors' actions under the trust fund doctrine are derivative, *Koninklijke*'s conclusion is unsupported by the cases it cites.

In support of its holding, *Koninklijke* cited *Saracco Tank & Welding Co. v. Platz*, 65 Cal. App. 2d 306 (1944), and *Commons v. Schine*, 35 Cal. App. 3d 141 (1973). *Saracco* concerned a repealed California statute that creates liability for directors of insolvent non-California corporations who distribute assets or dividends without authorization. *See* 65 Cal. App. 2d at 316.

9

1 The trust fund doctrine was mentioned in passing and played no substantive role in the analysis.
2 Moreover, the director's liability to creditors was explicitly defined by statute. In *Commons*, a
3 bankrupt limited partnership had as its sole general partner an insolvent corporation that was in
4 turn controlled by an individual and his alter-ego corporation. *See Commons*, 35 Cal. App. 3d at
5 143. The bankruptcy trustee had sued the individual and the alter-ego corporation for siphoning
6 assets to themselves at the expense of creditors. The issue was whether the defendants were open
7 to such suit. The court held that the insolvent corporation, as general partner of the bankrupt
8 partnership, was liable to the partnership's creditors, through the trustee. *See id.* at 145. Because
9 of that and because the individual defendant and his alter-ego corporation controlled the insolvent
10 corporation, the creditors through the trustee were entitled to sue them for breach of fiduciary
11 duty. *See id.* The case did not discuss whether the claims were derivative or direct, nor did it
12 mention the trust fund doctrine.

### 2. Appropriate Relief

Claim 4 is a derivative claim belonging to the corporation in the first instance. The bankruptcy trustee has the exclusive right to prosecute the claim. Trustee argues that the Court should therefore stay Plaintiffs' prosecution of the claim. Mot. at 16. He argues that the claim should not be dismissed, as it is theoretically possible that Trustee will abandon the claim later, whereupon Plaintiffs would have standing to pursue the claim. *Id.* at 17-18. Plaintiffs responds that Trustee cites no authority for his request for a stay and that he should instead move to dismiss or for summary judgment. Opp. at 5-6. In the alternative where the Court denies the stay, Trustee moves to intervene as plaintiff and real party in interest and would then seek dismissal without prejudice in light of the ongoing adversary proceeding. Mot. at 18 n.4.

Though Trustee does not cite authority for his request to stay Claim 4, the authority he cites for a stay of Claim 5 is analogous. *See* Mot. at 17 (quoting *City Nat'l Bank v. Chabot (In re Chabot)*, 100 B.R. 18, 23 (Bankr. C.D. Cal. 1989)). *Chabot* concerned a creditor-bank's fraudulent-conveyance claim against a bankrupt couple. The court held that while creditors like the bank maintain their rights against conveyance, the trustee has exclusive standing to assert that right during the bankruptcy case. *Chabot*, 100 B.R. at 23. "When a case is closed in which the

10

trustee did not pursue a fraudulent conveyance cause of action . . . the right to pursue the . . . action reposes once again in whomever is able to assert it." *Id.* As the Bankruptcy Appellate Panel of the Ninth Circuit noted, *Chabot* means that during the pendency of bankruptcy proceedings, "the creditor is stayed from prosecuting the claim and unless the trustee opts to intervene or to file his or her own fraudulent transfer action, the creditor may pursue the cause of action upon closing of the bankruptcy estate." *In re Vandevort*, No. BAP CC-09-1078-MOPAR, 2009 WL 7809927, at *6 (B.A.P. 9th Cir. Sept. 8, 2009). A stay of Plaintiffs' prosecution of Claim 4 is therefore proper under *Chabot*.

Plaintiffs belatedly argue that they should be permitted to amend the FAC to assert a direct breach of fiduciary duty claim. Opp. at 10. Trustee objects that granting leave to amend would be procedurally improper, as a motion for leave to amend is not before the Court and Trustee has not had the opportunity to object to such a motion. Docket No. 156 (Reply) at 12. The Court agrees.

C.  Claim 5

Trustee argues that, under 11 U.S.C. § 544, he has exclusive standing to pursue fraudulent transfer claims such as Claim 5. Mot. at 16-17. Plaintiffs concede the point. Opp. at 9 ("By virtue of 11 U.S.C. § 544, the Trustee does have standing to pursue fraudulent transfer claims. Thus, as to Claim 5 only, it appears that, as a matter of law, the Trustee is the proper party to assert a fraudulent conveyance/transfer claim on behalf of the ATPA bankruptcy estate."). Plaintiffs argue, however, that they should be permitted to amend the FAC to assert a claim for aiding and abetting a fraudulent transfer, for which they submit Trustee does not have standing to assert. *Id.* For the same reasons discussed above, a stay is proper and the Court denies leave to amend.

///
///
///
///
///
///

11

### III. CONCLUSION

For the above reasons, the Court determines that Claims 4 and 5, as alleged, are property of Trustee. Therefore, the Court **GRANTS** Trustee's request for a stay of Plaintiffs' prosecution of those claims.

This order disposes of Docket No. 150.

**IT IS SO ORDERED**.

Dated: February 13, 2018

_____
EDWARD M. CHEN
United States District Judge